IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 17-cv-00584-PAB-NYW

SEAN SEELEY,

     Plaintiff,

v.

HOME DEPOT U.S.A., INC.,

     Defendant.

_____

**ORDER**
_____

     This matter comes before the Court on Defendant Home Depot U.S.A., Inc.'s

Motion to Exclude Plaintiff's Treating Physicians' Expert Opinion Testimony [Docket No.

26] and Defendant Home Depot U.S.A., Inc.'s Motion to Exclude the Testimony of John

D. Papilion, M.D. [Docket No. 32]. The Court has jurisdiction pursuant to 28 U.S.C.

§ 1332.

## I. BACKGROUND

     This case arises out of a forklift accident at a Home Depot store in Thornton,

Colorado. Docket No. 4 at 3, ¶¶ 4-12. Plaintiff alleges that, on February 3, 2015, a

Home Depot employee "turned the forklift he was operating into a material cart, driving

it into [plaintiff] and pinning him between the material cart and a wall." *Id.*, ¶ 11. As a

result of the incident, plaintiff alleges that he sustained a crush injury to his knee that

has led to permanent physical impairment. *Id.*, ¶ 12.

     Plaintiff filed suit in the District Court for the City and County of Denver, Colorado

on February 1, 2017.  Docket No. 1-3.  On March 6, 2017, defendant removed the case

to this Court on the basis of diversity jurisdiction.  Docket No. 1 at 4, ¶ 7.  Plaintiff's

complaint asserts claims for premises liability, negligence, and negligent training and

supervision under Colorado law.  Docket No. 4 at 4-7.

Pursuant to Fed. R. Civ. P. 26(a)(2), plaintiff disclosed Dr. John D. Papilion, M.D.

as a retained expert witness on the "cause and extent of plaintiff's alleged physical

injuries, the reasonableness of treatment provided, and . . . any other subjects or

opinions referenced in his report and/or subsequent deposition testimony."  Docket No.

26-1 at 2-3.  Plaintiff also disclosed Dr. Jeffrey Arthur, plaintiff's orthopedic surgeon, as

a non-retained expert witness who "may testify about the nature of [plaintiff's] injuries,

including diagnosis, prognosis, and treatment" and the "reasonable and appropriate

charges for treatment."  *Id.* at 3.  On February 15, 2018, defendant filed a motion to

exclude Dr. Arthur's expert opinion testimony as improperly disclosed under Fed. R.

Civ. P. 26(a)(2).  Docket No. 26.  On February 21, 2018, defendant moved to exclude

the testimony of Dr. Papilion under Fed. R. Evid. 702.  Docket No. 32.

## II.  MOTION TO EXCLUDE TESTIMONY OF DR. ARTHUR

### A.  Legal Standard

Federal Rule of Civil Procedure 26(a) governs the requirements for disclosure of

witnesses.  Rule 26(a)(2)(B) provides that if a "witness is one retained or specially

employed to provide expert testimony in the case or one whose duties as the party's

employee regularly involve giving expert testimony," the party offering the witness must

supplement its disclosure with an expert report.  For other witnesses, Rule 26(a)(2)(C)

applies and the disclosure need only state "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

Treating physicians are typically designated as non-retained and therefore are not subject to Rule 26(a)(2)(B)'s report requirement. *See Davis v. GEO Grp.,* No. 10-cv-02229-WJM-KMT, 2012 WL 882405, at *2 (D. Colo. Mar. 15, 2012). However, "it is the substance of the expert's testimony, not the status of the expert, which will dictate whether a Rule 26(a)(2)(B) report will be required." *Trejo v. Franklin*, No. 04-cv-02523-REB-MJW, 2007 WL 2221433, at *2 (D. Colo. July 30, 2007) (internal quotation marks and brackets omitted). For example, a treating physician may properly testify about his or her "observations, diagnosis and treatment of a patient," i.e., "what he said and did and why he did it" – without submitting an expert report. *Davis*, 2012 WL 882405, at *2. On the other hand, if the physician opines as to issues of "causation, prognosis, or future disability" going beyond his personal observation or treatment of the patient, or "review[s] the records of another health care provider in order to formulate [an] opinion on the appropriateness of care," the witness will be considered "retained or employed" and will be required to file a written report under Rule 26(a)(2)(B). *Id.*; *see also Meyers v. Nat'l R.R. Passenger Corp.*, 619 F.3d 729, 734-35 (7th Cir. 2010) (holding that "a treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, should be deemed to be one 'retained or specially employed to provide expert testimony in the case,' and thus is required to submit an expert report in

3

accordance with Rule 26(a)(2)).

To determine whether the requirements of Rule 26(a)(2) have been satisfied, courts apply a burden-shifting framework. *See Davis,* 2012 WL 882405, at *2; *see also Morris v. Wells Fargo Bank,* N.A., No. 09-cv-02160-CMA-KMT, 2010 WL 2501078, at *2 (D. Colo. June 17, 2010) ("[S]ome showing must be made to distinguish an expert witness not required to provide a report under Rule 26(a)(2)(B) from the vast majority of cases where experts are required to provide a report."). The party moving to strike the witness must first show that the disclosing party was required to produce a written report under Rule 26(a)(2)(B). *Davis,* 2012 WL 882405, at *2. The burden then shifts to the party who disclosed the witness to show that a report was not required. *Id.*

**B.  Analysis**

Defendant requests that the Court exclude the expert opinions of plaintiff's treating physician, Dr. Arthur,[1] on two grounds: (1) plaintiff failed to provide an expert report as required under Rule 26(a)(2)(B); and (2) plaintiff's non-retained expert disclosure is deficient under Rule 26(a)(2)(C). Docket No. 26 at 5, 9.[2]

---

[1]Although defendant moves to exclude the opinions of plaintiff's treating "physicians," the final pretrial order identifies only one treating physician who plaintiff anticipates calling as a witness at trial. *See* Docket No. 40 at 6 (identifying Dr. Jeffrey Arthur as a will-call witness). Plaintiff confirms in his response to defendant's motion that the testimony of Dr. Arthur is the only testimony implicated by defendant's motion. *See* Docket No. 44 at 2 n.1.

[2]Plaintiff argues, as a threshold matter, that defendant's motion to exclude is untimely because it was filed after the deadline for filing motions pursuant to Fed. R. Civ. P. 702. Docket No. 44 at 4-5. However, plaintiff's argument is irrelevant because defendant seeks to exclude Dr. Arthur's testimony under Fed. R. Civ. P. 37(c)(1), not Rule 702.

### *1. Expert Report Requirement Under Rule 26(a)(2)(B)*

Defendant argues that plaintiff's Rule 26(a)(2) disclosures demonstrate that Dr. Arthur's opinions should have been set forth in an expert report pursuant to Rule 26(a)(2)(B) because those opinions were "formed . . . in anticipation of trial testimony." Docket No. 26 at 9. Defendant specifically identifies Dr. Arthur's opinions on prognosis, causation, reasonable costs for medical care in the future, and the need for future treatment as being subject to Rule 26(a)(2)(B)'s disclosure requirements. *Id.* Plaintiff acknowledges that "some limitations on Dr. Arthur's testimony are appropriate." Docket No. 44 at 7. For example, plaintiff states that Dr. Arthur will not testify regarding the costs of medical care. *Id.* He further agrees that Dr. Arthur may not express opinions that are (1) based on a review of information connected to the litigation, or (2) not "plainly discernible from the medical records that are based on and formed during treatment." *Id.*

To the extent that there is any disagreement between the parties regarding the issues to which Dr. Arthur may testify, that disagreement appears to center on the requirement that his opinions be formed at the time of treatment. *See* Docket No. 49 at 5 (arguing that proffered opinions were not "developed by Dr. Arthur at the time of his treatment"). While defendant is correct that opinions going beyond Dr. Arthur's personal observation and treatment of plaintiff would be subject to the requirements of Rule 26(a)(2)(B), *see Davis*, 2012 WL 882405, at *2; *Witherspoon v. Navajo Refining Co., L.P.*, 2005 WL 5988650, at *1 (D.N.M. June 28, 2005) ("Under Tenth Circuit law, treating physicians not disclosed as experts are limited to testimony based on personal

knowledge and may not testify beyond their treatment of a patient."), it is not clear that any of the opinions identified in plaintiff's Rule 26 disclosures fall into that category. In his supplemental Rule 26(a)(2) disclosure, plaintiff identifies four opinions to which Dr. Arthur is expected to testify: (1) as a result of the forklift collision, plaintiff "sustained contusion of the knee and a medial meniscus tear, and permanent post-traumatic meralgia paresthetica"; (2) the treatment provided by Dr. Arthur was "reasonable and appropriate, as were the charges";[3] (3) plaintiff's "knee pain symptoms benefitted from surgical intervention but require[] maintenance with cortisone injections"; and (4) "future treatment, including surgery, may be required to address persistent knee symptoms." Docket No. 26-3 at 3.[4] On their face, none of these opinions clearly go beyond the

---

[3]Plaintiff's disclosure states that Dr. Arthur will also testify as to the reasonableness of the treatment provided by Drs. Zimmer and Polovitz. *See* Docket No. 26-3 at 3. Although these opinions do not seem to be based on Dr. Arthur's treatment of plaintiff, defendant did not raise any objection to these opinions until doing so in its reply brief. *See* Docket No. 26 at 9 (challenging Dr. Arthur's opinions on prognosis, causation, reasonable costs for medical care in the future, and plaintiff's need for future treatment); Docket No. 49 at 5 (challenging opinion on the reasonableness of treatment and charges); *see also Tran v. Trustees of State Colleges in Colorado*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("Issues not raised in the opening brief are deemed abandoned or waived." (internal quotation marks omitted)). However, plaintiff agreed in his response that Dr. Arthur's testimony should be limited to those opinions formed during his treatment of plaintiff and "plainly discernable from the medical records." Docket No. 44 at 7. Because testimony concerning the reasonableness of the treatment provided by Drs. Zimmer and Polovitz would not satisfy this criteria, any issues concerning the admissibility of such testimony appear to be resolved.

[4]While defendant notes elsewhere in its motion that plaintiff's supplemental disclosure was "untimely," Docket No. 26 at 14, defendant does not argue that the Court should decline to consider the supplemental disclosure for purposes of resolving the motion.

scope of Dr. Arthur's personal knowledge and treatment of plaintiff.[5]  Moreover,

plaintiff's response to defendant's motion confirms that Dr. Arthur's proffered opinions,

including his opinions on the causation and prognosis of plaintiff's injury, were formed in

the course of treatment.  *See* Docket No. 44 at 11.

Defendant appears to contend that Dr. Arthur's testimony must be limited to

those opinions expressly stated in plaintiff's medical records.  *See* Docket No. 26 at 9

(noting that plaintiff's "disclosure admits that these doctors' opinions will not be confined

to their medical records"); Docket No. 49 at 6 (arguing that plaintiff's medical records

are silent on issues of causation, prognosis, and future medical treatment).  As

defendant points out, however, a treating physician's opinions need only satisfy two

requirements to avoid the sweep of Rule 26(a)(2)(B): (1) they "must have been

determined at the time of treatment" based on the physician's personal knowledge; and

(2) they must be properly disclosed under Rule 26(a)(2)(C).  *See* Docket No. 49 at 5.

The Court finds it sufficient, for purposes of the first requirement, that Dr. Arthur's

---

[5]The fact that Dr. Arthur's testimony may touch on issues such as causation and prognosis does not automatically subject those opinions to the requirements of Rule 26(a)(2)(B).  The rationale for permitting a treating physician to testify on the basis of his or her personal knowledge and treatment of a patient "extends to treating physician opinions regarding causation and prognosis."  *Trejo*, 2007 WL 2221433, at *1; *see also Washington v. Arapahoe Cty. Dep't of Social Servs.*, 197 F.R.D. 439, 442 (D. Colo. 2000) ("[Treating physicians] are witnesses testifying to the fact of their examination, diagnosis and treatment of a patient.  It does not mean that the treating physicians do not have an opinion as to the cause of an injury based upon their examination of the patient or to the degree of injury in the future.  These opinions are a necessary part of the treatment of the patient.  Such opinions do not make the treating physicians experts . . . ." (internal quotation marks omitted)).  It is only when opinions regarding causation and prognosis go beyond the treating physician's personal knowledge and treatment of the patient that the proponent of the testimony is required to submit an expert report pursuant to Rule 26(a)(2)(B).

opinions are fairly discernible from his medical records. *See* Docket No. 44 at 11-12; *see also* Docket No. 44-3 at 1 (noting forklift accident and absence of prior trauma or issues with knee); Docket No. 44-5 at 4 (discussing surgical treatment, plaintiff's continuing knee pain, and follow-up cortisone injections). A requirement that every opinion offered by a treating physician at trial be expressly stated in the medical records is neither practicable nor necessary. *See Hayes v. Am. Credit Acceptance, LLC*, 2014 WL 3927277, at *2 (D. Kan. Aug. 12, 2014) ("The fact that medical records may or may not memorialize the anticipated opinions is not the determinative factor for whether the treating physicians would be subject to the requirements of retained experts. The issue is whether it is apparent that the anticipated opinion testimony extends beyond the information made known to the treating physicians during their care and treatment of their patients.").[6]

Because the evidence before the Court does not demonstrate that plaintiff has improperly designated Dr. Arthur as a non-retained expert witness, the Court will deny that portion of defendant's motion based on Rule 26(a)(2)(B).

### 2. Sufficiency of Disclosures Under Rule 26(a)(2)(C)

Defendant argues that, even if Dr. Arthur was properly designated as a non-retained expert witness, plaintiff's disclosures are insufficient under Rule 26(a)(2)(C).

---

[6]Defendant cites *Walker v. Target Corp.*, 2017 WL 2903253 (S.D. Miss. July 6, 2017), in which the court stated that, "if a treating physician's expected testimony – whether fact or opinion – is not in the medical records from his or her treatment of the plaintiff, the plaintiff is required to produce an expert report in compliance with Rule 26(a)(2)(B)." *Id.* at *1. The Court does not read this statement as imposing a requirement that a treating physician's opinions be specifically stated in the medical records.

Docket No. 26 at 9. For non-retained experts, the proponent of the testimony is required to disclose "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

Plaintiff made two Rule 26(a)(2)(C) disclosures with respect to Dr. Arthur. The first, which was served on defendant on August 17, 2017, states that Dr. Arthur is expected to testify about "the nature of [plaintiff's injuries sustained as a result of the February 3, 2015 forklift collision], including diagnosis, prognosis, and treatment." Docket No. 26-1 at 3. The disclosure further avers that Dr. Arthur "may testify that the collision resulted in a complex tear of Mr. Seeley's left medial meniscus, which required surgery, and post-traumatic meralgia paresthetica" and "about the reasonable and appropriate charges for treatment." *Id.* On August 18, 2017, defendant sent plaintiff a letter stating that the disclosure "contain[ed] no summary of the facts or opinions they will testify to at trial." Docket No. 26-2 at 2.[7] On September 18, 2017, plaintiff made the following supplemental disclosure:

> Dr. Arthur may testify about the nature of Mr. Seeley's lower extremity injuries referenced above. In particular, he may testify that as a result of the forklift collision described to him by Mr. Seeley, he sustained contusion of the knee and a medial meniscus tear, and permanent post-traumatic meralgia paresthetica. Dr. Arthur may testify that the treatment he provided, and care provided by referred neurologists Drs. Zimmer and Polovitz, was reasonable and appropriate, as were the charges. Dr. Arthur may testify that Mr. Seeley's knee pain symptoms benefitted from

---

[7]Defendant erroneously states in its motion that defendant contacted plaintiff on October 25, 2017 regarding the deficiencies in his Rule 26 disclosure. *See* Docket No. 26 at 12.

surgical intervention but requires [sic] maintenance with cortisone injections. Potential future treatment, including surgery, may be required to address persistent knee symptoms. Treatment is on-going, and opinions based on that treatment will be provided in future supplements.

Docket No. 26-3 at 3.

Defendant argues that plaintiff's disclosures do not provide a "summary of the facts and opinions" to which Dr. Arthur is expected to testify and are therefore insufficient under Rule 26(a)(2)(C). Docket No. 26 at 9-12. The Court finds that defendant is only partially correct.

As other courts have noted, there is "scant case law outlining what constitutes a sufficient disclosure under Rule 26(a)(2)(C)." *Chambers v. Fike*, 2014 WL 3565481, at *7 (D. Kan. July 18, 2014). The Advisory Committee for the Federal Rules has cautioned that the Rule 26(a)(2)(C) disclosure "is considerably less extensive than the report required by Rule 26(a)(2)(B)" and that "[c]ourts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained." Fed. R. Civ. P. 26 advisory committee notes, 2010 amendments. At a minimum, however, a disclosure must "obviate the danger of unfair surprise regarding the factual and opinion testimony of the non-retained expert" and "contain more than a passing reference to the general type of care a treating physician provided." *Chambers*, 2014 WL 3565481, at *7. Additionally, while a disclosure need not "outline each and every fact to which the non-retained expert will testify or outline the anticipated opinions in great detail," it should "provide a brief account that states the main points of the entirety of the anticipated testimony." *Id.* (internal quotation marks omitted).

Defendant does not identify those aspects of the disclosures lacking the requisite

level of specificity under Rule 26(a)(2)(C). *See* Docket No. 26 at 12 (stating only that plaintiff's disclosures "suffer[] from the same fatal flaw" as the disclosures in *Williams v. State*, 2015 WL 5438596 (M.D. La. Sept. 11, 2015)). Nevertheless, the Court finds that plaintiff's disclosures largely satisfy the above requirements. Plaintiff's supplemental disclosure outlines four opinions to which Dr. Arthur is expected to testify: (1) plaintiff "sustained contusion of the knee and a medial meniscus tear, and permanent post-traumatic meralgia paresthetica"; (2) the treatment provided by Dr. Arthur, as well as the charges for that treatment, was "reasonable and appropriate"; (3) plaintiff's "knee pain symptoms benefitted from surgical intervention but require[] maintenance with cortisone injections"; and (4) further treatment, including surgery, may be necessary to address plaintiff's symptoms. Docket No. 26-3 at 3. These opinions constitute more than "a passing reference to the general type of care [Dr. Arthur] provided" and, for the most part, "obviate the danger of unfair surprise" to defendant. *Chambers*, 2014 WL 3565481, at *7. Indeed, the cases defendant cites involved disclosures far more general than the ones at issue here. *See, e.g.*, *Patton v. Jacobs Eng'g Grp. Inc.*, 2016 WL 1090566, at *3 (M.D. La. Mar. 18, 2016) (finding Rule 26(a)(2)(C) disclosure insufficient where it "broadly identified the 'subject matter' on which each of [plaintiff's] treating physicians [was] expected to testify (psychology, psychiatry, speech-language pathology, and orthopedic surgery)" but did "not even arguably provide 'a summary of the facts and opinions' to which each of these treating physicians [was] expected to testify"); *Velasquez v. Danny Herman Trucking,* Inc., 2015 WL 8764271, at *2 (S.D. Tex. Dec. 15, 2015) (finding "generalized summary" that applied to all experts

collectively insufficient under Rule 26(a)(2)(C)); *Tolan v. Cotton*, 2015 WL 5332171, at

*2, *7 (S.D. Tex. Sept. 14, 2015) (finding disclosures insufficient under Rule 26(a)(2)(C)

where the plaintiffs "merely named the five baseball players and conclusorily claimed

that they 'will offer opinions and testimony regarding Robert Tolan's prospects as a

major league baseball player before and after his injuries'" and did not "identify the

actual substance of the opinions and testimony beyond stating that 'Robert Tolan had

the talent and skill to have a long-term career as a professional baseball player'");

*Williams v. Louisiana*, 2015 WL 5438596, at *4 (M.D. La. Sept. 14, 2015) (finding

disclosure insufficient under Rule 26(a)(2)(C) where plaintiff "produced medical records

alone" and failed to provide any "actual summary of the facts and opinions to which the

witness [was] expected to testify").

On the other hand, the Court agrees that plaintiff's disclosures are deficient to

the extent that they fail to specify the factual basis for Dr. Arthur's opinions.  The

Advisory Committee's note to the 2010 amendments states that the amended version

of Rule 26(a)(2)(C) "mandate[s] summary disclosures of the opinions to be offered by

expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) *and of

the facts supporting those opinions*."  Fed. R. Civ. P. 26 advisory committee notes,

2010 amendments (emphasis added).  Thus, while plaintiff is not required to "outline

each and every fact," *Chambers*, 2014 WL 3565481, at *7, he must at least provide a

brief account of the principal facts supporting Dr. Arthur's opinions.  *See Little Hocking

Water Ass'n, Inc. v. E.I. DuPont de Nemours & Co.*, 2015 WL 1105840, at *9 (S.D. Ohio

Mar. 11, 2015) (holding that Rule 26(a)(2)(C) requires "a summary of facts supporting

[the expert's] opinions" – i.e., "a brief account of facts . . . that states the main points derived from a larger body of information"); *Hayes v. Am. Credit Acceptance, LLC*, 2014 WL 3927277, at *3 (D. Kan. Aug. 12, 2014) (finding that plaintiffs' disclosures "[fell] short . . . concerning the anticipated testimony that defendants' conduct proximately caused" the injuries alleged because they "lack[ed] any factual detail describing how this [was] the case").

### 3.  Appropriateness of Exclusion as a Sanction Under Rule 37(c)

Because the Court finds that plaintiff's disclosures do not fully comply with the requirements of Rule 26(a)(2)(C), the Court must determine whether to exclude Dr. Arthur's testimony under Fed. R. Civ. P. 37(c).  Pursuant to that rule, a party who fails to disclose an expert witness as required under Rule 26(a)(2) may not "use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  The party who fails to disclose has the burden of showing that its failure to comply with Rule 26(a)(2) was substantially justified or harmless.  *Skarda v. Johnson & Johnson*, 2014 WL 12792345, at *1 (D.N.M. June 30, 2014) (citing *Wilson v. Bradlees of New England Inc.*, 250 F.3d 10, 21 (1st Cir. 2001)).  Although "[t]he determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court," *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999), four factors should guide a court's analysis: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the

trial; and (4) the moving party's bad faith or willfulness." *Id.*

Considering these factors, the Court finds that the exclusion of Dr. Arthur's testimony is unwarranted. Defendant should not suffer any prejudice by the admission of Dr. Arthur's testimony given that plaintiff's supplemental disclosure identifies with specificity the opinions to which Dr. Arthur is expected to testify. *See Hayes*, 2014 WL 3927277, at *4 (declining to exclude witness where "[p]laintiffs' disclosures put the defendants on notice generally that the treating physicians would be testifying their conduct proximately caused plaintiffs' medical conditions to worsen").[8] Additionally, although plaintiff has not disclosed the factual basis for each of those opinions, he has supplied Dr. Arthur's medical records, which provide at least some notice of the relevant facts. In evaluating prejudice, the Court also cannot overlook the fact that plaintiff reached out to defendant nearly a year ago offering to cure any perceived deficiencies in his supplemental disclosure. *See* Docket No. 44-1; *cf. Adams v. Cline Agency, Inc.*, No. 10-cv-02758-WJM-KLM, 2013 WL 2444696, at *3 (D. Colo. June 5, 2013) (finding that defendants bore "some responsibility for their asserted lack of adequate opportunity to prepare a defense for any such undisclosed evidence" where "Defendants were specifically invited by the Magistrate Judge to reopen discovery after the Final Pretrial Conference" but failed to do so). While defendant argues that it is

---

[8]Contrary to defendant's assertions, this information should have been sufficient to allow defendant to determine whether to hire a rebuttal expert. *See* Docket No. 26 at 13-14. Moreover, plaintiff indicated that he would be willing to supplement his disclosures to cure any deficiencies, *see* Docket No. 44-1 at 4, but defendant never followed up on that offer. Dr. Arthur's expert testimony will, however, be confined to those opinions identified in plaintiff's supplemental disclosure, *see* Docket No. 26-3, as well as the facts supporting those opinions.

plaintiff's burden to cure any deficiencies in his disclosures, Docket No. 49 at 7, that is precisely what plaintiff was attempting to do when he sought further guidance from defendant in September 2017. *See* Docket No. 44-1 at 4 (offering to provide more detail regarding Dr. Arthur's testimony but requesting to "have a conversation about what more [defendant was] looking for"). It is not clear that defendant ever made a serious effort to resolve the parties' disagreement over the disclosures, despite plaintiff's apparent willingness to do so. This conclusion is further supported by defendant's failure to demonstrate that it made a good faith effort to confer with plaintiff before filing its motion. Defendant's notice of conferral and supporting affidavit indicate that defendant contacted plaintiff twice on February 15, 2018 to ask if plaintiff would be opposed to the relief sought in the motion. *See* Docket No. 26 at 16; Docket No. 49-1 at 3, ¶ 5. Although plaintiff's counsel was unavailable to confer at that time, there was no apparent reason – such as an impending deadline – why defendant could not have waited an additional day to file the motion.[9] Indeed, it seems likely that the entire dispute could have been resolved without the Court's intervention.

The Court also finds that the second and third factors weigh against exclusion. Any prejudice resulting from plaintiff's lack of specificity can be cured, without any disruption to the upcoming trial, by allowing plaintiff to supplement his disclosures. *See, e.g. Hayes*, 2014 WL 3927277, at *4 (finding that any prejudice caused by inadequate disclosures could be "cured by allowing plaintiffs to supplement their disclosures"). While defendant argues that Dr. Arthur's testimony would disrupt the trial by confusing

---

[9]Two telephone calls to opposing counsel on the same day of filing are rarely sufficient conferral under D.C.COLO.LCivR 7.1(a).

the jury as to the "distinction between lay person testimony and expert testimony," Docket No. 26 at 14, this concern exists in every case in which the testimony of a treating physician is introduced. It therefore does not constitute an appropriate ground for exclusion.[10]

As to the fourth factor, the Court does not find any evidence of bad faith or willfulness. Plaintiff argues that defendant's delay in filing its motion and its failure to confer with plaintiff's counsel constitute evidence of bad faith. Docket No. 44 at 6. However, counsel for defendant avers in an affidavit that he has "no recollection of ever receiving or reading Plaintiff's September 2017 e-mail response" regarding the Rule 26 disclosures and "did not go back and review the entire correspondence file for the case" before preparing the motion to exclude. Docket No. 49-1 at 2-3, ¶¶ 3-4. While counsel admits that he "should have reviewed the entire correspondence file" before filing the motion, *id.*, ¶ 4, counsel's negligence or lack of diligence does not, standing alone, support a finding of bad faith. *See, e.g.*, *Thorne Research, Inc. v. Xymogen*, 2018 WL 815500, at *2 (D. Utah. Feb. 9, 2018) (finding that, although there was a lack of diligence on the part of the defendant, there was no evidence of bad faith or willfulness). Nonetheless, because the remaining *Woodworker's Supply* factors all counsel against excluding Dr. Arthur's testimony, defendant's request for such relief will be denied. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 954 (10th Cir. 2002) (finding that "good faith alone" is not "enough to overcome the other [*Woodworker's Supply*] factors"). Within seven days of this order, plaintiff will be required to

---

[10]Moreover, the proper remedy for this concern lies in the Court's jury instructions, not in the exclusion of the expert testimony.

supplement his disclosures with the information identified above – namely, the factual basis for each of the four opinions specified in the supplemental disclosure provided on September 18, 2017.

## III.  MOTION TO EXCLUDE TESTIMONY OF DR. PAPILION

### A.  Legal Standard

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  As the rule makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area.  Instead, the Court must "perform[] a two-step analysis."  *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). After determining whether the expert is qualified, the Court must assess whether the specific proffered opinions are reliable.  *See id.*; Fed. R. Evid. 702 (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case").

Rule 702 thus imposes on the district court a "gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'"

*United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). To perform this role, the Court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93). In assessing reliability, "the court may consider several nondispositive factors: (1) whether the proferred theory can and has been tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific community." *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). These factors are not applicable in every case. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 150-53 (1999). Indeed, the trial court has "the same kind of latitude in deciding *how* to test an expert's reliability . . . as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable." *Id.* at 152. Regardless of the specific factors applied, however, the objective of *Daubert*'s gatekeeping requirement remains the same: to ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

Although the proponent of the challenged testimony has the burden of establishing admissibility, *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (citing *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001)), the reliability standard does not require proof "that the opinion is objectively correct, but only that the witness has sufficient expertise to choose and apply a

methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008) (internal citation omitted).

Assuming the standard for reliability is met, the Court must also ensure that the proffered testimony will assist the trier of fact. *See Kumho Tire*, 526 U.S. at 156; *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122-23 (10th Cir. 2006). "Relevant expert testimony must logically advance[ ] a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (internal quotation marks and citations omitted). In assessing whether expert testimony will assist the trier of fact, the Court should also consider "whether the testimony 'is within the juror's common knowledge and experience,' and 'whether it will usurp the juror's role of evaluating a witness's credibility.'" *Id.* at 476-77 (quoting *Rodriguez-Felix*, 450 F.3d at 1123).

**B. Analysis**

Plaintiff has designated John D. Papilion, M.D., an orthopedic surgeon, to testify "regarding the cause and extent of plaintiff's alleged physical injuries" and "the reasonableness of treatment provided." Docket No. 32-1 at 3. In his expert report, Dr. Papilion opined that the forklift accident caused plaintiff to sustain "a documented crush injury to his left knee and left hip" resulting in a medial meniscal tear, a medial collateral ligament injury, and a postraumatic contusion to his lateral femoral cutaneous nerve. Docket No. 32-3 at 5-6. Defendant argues that Dr. Papilion is not qualified to opine that

the forklift accident caused plaintiff's meralgia paresthetica.  Docket No. 32 at 4.[11]

Defendant further contends that Dr. Papilion's opinions regarding the cause of plaintiff's injuries and plaintiff's need for future medical care are unreliable.  *Id.*[12]

### 1. Qualifications

In his report, Dr. Papilion opined that plaintiff's medial meniscal tear and medial collateral ligament injury are related to the crush injury he sustained during the forklift accident at Home Depot.  Docket No. 32-3 at 6.  He further stated that plaintiff has a postraumatic contusion to his lateral femoral cutaneous nerve that is, at present, a "permanent injury."  *Id.*  Without citing any authority, defendant contends that Dr. Papilion is not qualified to opine that the forklift accident caused plaintiff's meralgia paresthetica because Dr. Papilion is an orthopedic surgeon and meralgia paresthetica

---

[11]Dr. Papilion never explicitly states that the forklift accident caused meralgia paresthetica.  Elsewhere in his report, however, Dr. Papilion defines meralgia paresthetica as "contusion/compression of the lateral femoral cutaneous nerve."  *Id.* at 5; *see also Cobb v. Colvin*, 2014 WL 5659414, at *7 n.3 (C.D. Cal. Nov. 4, 2014) ("Meralgia paresthetica is a condition characterized by tingling, numbness, and burning pain in the outer thigh.  The cause of meralgia paresthetica is compression of the nerve that supplies sensation to the skin surface of the thigh." (citing http://www.mayoclinic.org/diseases-conditions/meralgia-paresthetica/basics/definition/con-20030852)).

[12]Although defendant indicates it is challenging Dr. Papilion's opinions on causation and on plaintiff's need for future medical care, *see* Docket No. 32 at 4, defendant does not explain how Dr. Papilion's failure to conduct an independent investigation of the forklift incident or rule out other possible causes of plaintiff's injuries would render his conclusions as to future medical care unreliable.  Moreover, defendant does not identify with specificity which opinions on future medical care it is seeking to exclude.  *See* Practice Standards (Civil Cases), Judge Philip A. Brimmer, § III.G (requiring Rule 702 motions to "identify with specificity each **opinion** the moving party seeks to exclude").  Thus, these objections are waived.  The Court will focus its analysis on Dr. Papilion's causation opinions.

is a neurological condition. Docket No. 32 at 4.[13]  Plaintiff responds that meralgia

paresthetica is a medical condition at the intersection of neurology and orthopedic

medicine and thus it is "a topic on which a neurologist . . . and an orthopedic specialist

are both qualified."  Docket No. 48 at 5.  He also presents an affidavit from Dr. Papilion

stating that, during his thirty-plus years of practice as an orthopedic surgeon, he has

"evaluate[d], treat[ed], and diagnose[d] . . . neurological injury to the spine, pelvis, and

extremities," including "numerous cases of meralgia paresthetica."  Docket No. 48-1 at

1.

 Although a witness' qualifications are not a sufficient basis for admitting expert

testimony, *Crabbe*, 556 F. Supp. 2d at 1220, they constitute a threshold requirement

which, if not met, requires the exclusion of expert opinions.  Dr. Papilion must "stay[]

within the reasonable confines of his subject area."  *Ralston v. Smith & Nephew

Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (quotation marks and citation

omitted); *see Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1093 (W.D. Okla.

2009) ("[T]he expert's qualifications must be both (i) adequate in a general, qualitative

sense (i.e., 'knowledge, skill, experience, training or education' as required by Rule 702)

and (ii) specific to the matters he proposes to address as an expert.").  "[M]erely

possessing a medical degree is not sufficient to permit a physician to testify concerning

---

[13]Defendant's failure to cite any authority, legal or medical, for the proposition that an orthopedic surgeon is unqualified to opine as to the cause of a patient's meralgia paresthetica is a sufficient basis, standing alone, to reject defendant's argument.  *See, e.g.*, *Brubaker v. Mr. Heater Corp.*, 2010 WL 11561860, at *3 (D. Kan. Feb. 11, 2010) (summarily rejecting defendants' objection to expert's qualifications on ground that defendants "cite[d] no authority for the proposition that an engineer must first design a consumer product before he can testify as to any potential defects").

any medical-related issue." *Ralston*, 275 F.3d at 970; *cf. In re Cessna 208 Series Aircraft Products Liability Litigation*, 2009 WL 3756980, at *13 (D. Kan. Nov. 9, 2009) ("Where alleged expertise with regard to other aspects of a field gives a proffered expert no special insight into the issues of the case, such alleged expertise does not qualify the witness as an expert.").

Dr. Papilion obtained his medical degree from the University of Colorado in 1981 and has worked as an orthopedic surgeon for over 30 years. *See* Docket No. 32-2 (Colorado licensure obtained in July 1982). In addition to treating patients for conditions related to both degenerative and trauma-induced musculoskeletal injuries at Advanced Orthopedic and Sports Medicine Specialists, Dr. Papilion currently serves as a Clinical Assistant Professor at the University of Colorado Medical School. Docket No. 48-1 at 1. In his practice as an orthopedic surgeon, Dr. Papilion has "evaluate[d], treat[ed],and diagnose[d] all aspects of musculoskeletal disease, including neurologic injury to the spine, pelvis, and extremities." *Id.* He has also treated "numerous cases of meralgia paresthetica." *Id.*

The Court agrees with plaintiff that the fact that Dr. Papilion is not a neurologist does not preclude him from opining as to the cause of plaintiff's meralgia paresthetica. As plaintiff contends in his response, courts have implicitly recognized areas of overlap between neurology and orthopedic medicine. *See, e.g.*, *Corneli v. Adventure Racing Co., LLC*, 2015 WL 4716285, at *6 (N.D.N.Y. Aug. 7, 2015) (finding that orthopedic surgeon had the "medical knowledge to provide an opinion regarding how Plaintiff's spine was injured in such a way to cause permanent paraplegia"); *Rafferty v. Erhard*,

2012 WL 2577473, at *7 (W.D.N.Y. July 3, 2012) (rejecting argument that neurologist lacked necessary qualifications to give expert testimony contradicting orthopedic experts and finding that neurologist was "qualified to testify as to the spinal injuries and pain related to the plaintiff's claims"). Additionally, plaintiff has demonstrated that Dr. Papilion has sufficient experience treating neurological injuries, including meralgia paresthetica, to opine on the cause of plaintiff's condition. *See* Fed. R. Evid. 702 advisory committee notes, 2000 Amendments (stating that "the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience").

### 2. *Reliability*

Defendant argues that Dr. Papilion's opinions that the forklift accident caused plaintiff to sustain injuries to his left knee and hip and permanent damage to his left femoral cutaneous nerve is unreliable because (1) Dr. Papilion did not apply a reliable methodology in formulating his opinions; and (2) Dr. Papilion's opinions are based on insufficient facts or data. Docket No. 32 at 4-10.

### a. **Methodology**

Defendant contends that Dr. Papilion did not apply a reliable methodology to formulate his causation opinions because he did not conduct an investigation into the accident, inquire into plaintiff's pre-incident medical condition, or attempt to rule out other possible causes of plaintiff's medical problems. Docket No. 32 at 5-8.

Establishing injury causation requires a showing of both general and specific causation. *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 881 (10th Cir. 2005). "General causation" refers to whether the accident in question is, in the abstract,

capable of producing the type of injury suffered. *Id*. General causation may be established by such things as epidemiological evidence, *id*., but an expert is not required to cite published studies "in order to reliably conclude that a particular object caused a particular illness." *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1211 (10th Cir. 2002) (citing *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1209 (8th Cir. 2000)). "Specific causation" refers to whether a particular accident or substance caused the specific injury at issue. *Id.* Once a party has established general causation, differential diagnosis may be admissible to prove specific causation. *Goebel v. Denver & Rio Grande Western R.R. Co.*, 346 F.3d 987, 999 (10th Cir. 2003). "'Differential diagnosis' refers to the process by which a physician 'rules in' all scientifically plausible causes of the plaintiff's injury. The physician then 'rules out' the least plausible causes of injury until the most likely cause remains." *Hollander*, 289 F.3d at 1209 (internal citations and alterations omitted). Differential diagnosis is admissible even if the expert does not "explicitly rule out" every possible alternative cause. *Goebel*, 346 F.3d at 999. Although an expert may not rely solely on temporality to establish specific causation, temporality may be used as one factor "taken into account in considering causation." *Watson v. Dillon Cos., Inc.*, 797 F. Supp. 2d 1138, 1155 (D. Colo. 2011).

In a declaration filed on March 14, 2018, Dr. Papilion described the methodology he used for determining causation in this case. He began by reviewing descriptions of the forklift accident contained in plaintiff's medical records and deposition testimony. Docket No. 48-1 at 2. Based on those descriptions, Dr. Papilion determined that such an accident was capable of producing plaintiff's injuries. *Id.* Dr. Papilion next reviewed

plaintiff's medical records to rule out alternative causes of plaintiff's injuries, including degenerative change. *Id.* at 2-3. Finally, Dr. Papilion considered other possible sources of trauma, ultimately concluding that plaintiff's medical history did not contain any other reports of trauma between September 19, 2014, when there was "objective evidence of a healthy knee," and April 21, 2015, when there was "objective evidence of a meniscul tear." *Id.* at 3.

Dr. Papilion's methodology largely follows the three-step process that the Tenth Circuit has found to be a reliable means of establishing injury causation. *See Neiberger v. Fed Ex Ground Package Sys., Inc.*, 566 F.3d 1184, 1190-91 (10th Cir. 2009) (finding that expert's methodology was "one generally accepted in the medical community and by the courts" where expert "considered the possible recognized causes [of the plaintiff's injury] and eliminated those contradicted by the evidence"); *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 881, 886-87 (10th Cir. 2005) (finding that expert was required to present reliable testimony to support both general and specific causation); *Etherton v. Owners Ins. Co.*, 35 F. Supp. 3d 1360, 1367 (D. Colo. 2014) (finding that expert's methodology followed process found to be reliable means of injury causation where he (1) determined general causation, (2) considered whether there was a temporal relationship between plaintiff's injury and the collision, and (3) performed a differential diagnosis), *aff'd* 829 F.3d 1209 (10th Cir. 2016). Nonetheless, defendant argues that Dr. Papilion's determination of general causation – i.e., that the forklift accident was capable of causing plaintiff's injuries – is unreliable because he did not conduct any independent investigation into the accident or the "forces" that "would have

been generated" by the collision.  Docket No. 32 at 5.  Plaintiff counters that the "incident [was] sufficiently described [in plaintiff's medical records] to support the preliminary question whether it [was] capable of causing injury."  Docket No. 48 at 9. Plaintiff further argues that Dr. Papilion's failure to consider "[m]ore specific force equation data" goes to the weight, not the admissibility, of his opinions.  *Id.* at 10.

The Court agrees with plaintiff that the accident descriptions in plaintiff's medical records were sufficient to enable Dr. Papilion to formulate an opinion as to general causation.  The incident was described at least twice in plaintiff's records.  Dr. Arthur stated that plaintiff "[w]as at Home Depot and forklift hit his cart in aisle and pinned his knee."  Docket No. 48-2 at 1.  Additionally, Dr. Polovitz reported that the Home Depot "employee started the forklift and it hit [plaintiff's] cart," which hit plaintiff in the hip. Docket No. 48-3 at 1.  Dr. Papilion states in his declaration that he has "reviewed [plaintiff's] deposition" and found plaintiff's description of the incident to be "consistent with what was reported in the medical records."   Docket No. 48-1 at 2.

Experts frequently rely on secondary sources, such as medical records, accident reports, and eyewitness testimony, to develop opinions on causation.  *See, e.g.*, *Delgado v. Unruh*, 2017 WL 957437, at *18 (D. Kan. Mar. 13, 2017) (finding that expert's opinions regarding injury causation were based on reliable methodology where expert based his findings on a review of the "medical records, the accident reports, and the accident photographs"); *Davenport v. Menard, Inc.*, 2016 WL 1298636, at *3 (D. Wyo. Feb. 9, 2016) (finding opinions regarding general causation and reconstruction of accident to be reliable where expert developed opinions by reviewing plaintiff's medical records, scientific articles, surveillance footage, and photographs from the accident

scene); *McDaniel-Sharp v. Wal-Mart Stores,* Inc., 2012 WL 4210511, at *3 (D. Kan. Sept. 18, 2012) (rejecting argument that expert opinions were unreliable because of expert's failure to review store surveillance footage of accident and stating that defendant's argument went "to the weight and not the admissibility of the evidence"); *cf. Bautista v. MVT Servs., LLC*, No. 16-cv-01086-NYW, 2017 WL 6054888, at *5 (D. Colo. Dec. 7, 2017) ("[C]ourts within the Tenth Circuit and beyond have accepted the reconstruction of accidents based on the expert's review of police reports, photographs of the scene, and witness statements."). And while defendant suggests that Dr. Papilion cannot opine as to general causation absent information regarding the "forces [that] would have been generated in the alleged incident," Docket No. 32 at 5, Dr. Papilion states in his declaration that "specific force equations" were not necessary to his determination that the forklift accident was capable of causing plaintiff's injury. Docket No. 48-1 at 2. Defendant does not challenge this assertion. Any remaining questions concerning the sufficiency of the factual basis for Dr. Papilion's general causation opinion bear on the weight of the opinion and not its admissibility. *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 654 (10th Cir. 1991); *see also Davenport*, 2016 WL 1298636, at *3 (finding that, although expert "did not consider all available forms of evidence" in reconstructing accident, "his decision to rely on certain pieces of evidence in comparison [to] others [went] to the weight of the evidence, not admissibility").

Defendant challenges Dr. Papilion's opinions on specific causation, arguing that Dr. Papilion did not conduct an investigation into plaintiff's pre-incident medical condition or attempt to rule out other possible causes of plaintiff's injuries. Docket No. 32 at 6-8. As plaintiff points out, however, these arguments are belied by the record. In

his expert report, Dr. Papilion thoroughly reviewed plaintiff's medical records and concluded that plaintiff's "medial meniscal tear" and "medial collateral ligament injury" were directly related to the crush injury at Home Depot. Docket No. 32-3 at 6. While Dr. Papilion acknowledged that "[t]he configuration of the medial meniscus tear . . . is typically seen as a degenerative tear with complaining degenerative arthritic symptoms," he concluded that degeneration was an unlikely cause of plaintiff's condition because plaintiff was only 47 years old, plaintiff "had no history of any previous problems with his left knee," and "[f]indings at arthroscopy revealed a normal articular cartilage in the medial compartment." Docket No. 32-3 at 5-6.

Defendant argues that Dr. Papilion failed to consider evidence of degeneration in plaintiff's left knee, specifically, radiographs from September 19, 2014 showing signs of calcification and early chondrocalcinosis. Docket No. 32 at 7. However, Dr. Papilion explained in his declaration that he did consider this evidence but that "[e]ven this most advanced degree of chondrocalcinosis indicates a healthy knee which would not, in the short time following [the] x-ray, degenerate into a tear." Docket No. 48-1 at 3. Additionally, he stated that plaintiff's ligament strain and paresthesia are not degenerative injuries. *Id.* Dr. Papilion also ruled out other sources of trauma. He noted in his declaration that there was "objective evidence of a healthy knee on September 19, 2014," "objective evidence of a menicul tear April 21, 2015," and no reports of trauma to the left leg during the intervening period other than the Home Depot incident. Docket No. 48-1 at 3.

Dr. Papilion's expert report and supporting declaration demonstrate that he engaged in a differential diagnosis to rule out other possible causes of plaintiff's

injuries. "In the medical context, differential diagnosis is a common method of analysis, and federal courts have regularly found it reliable under *Daubert*." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1237 (10th Cir. 2005) (collecting cases). Accordingly, the Court finds that Dr. Papilion applied a reliable scientific methodology to formulate his opinions on specific causation. "The fact that several possible causes might remain 'uneliminated' . . . only goes to the accuracy of the conclusion, not to the soundness of the methodology." *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 390 (6th Cir. 2000) (quoting *Ambrosini v. Labarraque*, 101 F.3d 129, 140 (D.C. Cir. 1996)); *see also Goebel*, 346 F.3d at 999-1000 (district court did not abuse its discretion in finding differential diagnosis reliable where expert failed to explicitly rule out depression as a cause of the plaintiff's symptoms).

### b. Sufficiency of Facts and Data

Defendant argues that Dr. Papilion's causation opinions are based on insufficient facts or data because (1) they rely on plaintiff's "self-serving and self-interested" statements, (2) the medical records do not support a conclusion that plaintiff sustained a "crush injury," and (3) there is no support for Dr. Papilion's opinion that meralgia paresthetica can develop two months after a compression injury. Docket No. 32 at 5, 8-9.

The Court finds the first argument unpersuasive. Dr. Papilion reached the conclusion that the forklift accident caused plaintiff's injuries after engaging in a differential diagnosis based on a review of plaintiff's medical records. There is no basis for defendant's argument that Dr. Papilion relied solely on plaintiff's self-serving

statements regarding the cause of his injuries.  *See* Docket No. 32 at 9.

Defendant's second and third arguments are also unavailing.  Defendant contends that there is no documentation of a "crush injury" in plaintiff's medical records. Docket No. 32 at 6.  However, Dr. Papilion explained in his declaration that the term "crush injury" merely denotes "an injury involving compression" and "does not define the quality of injury."  Docket No. 48-1 at 4.  He further stated that there was "ample objective evidence of injury" in plaintiff's medical records and that the absence of bruising or other visual signs of injury was not inconsistent with internal harm.  *Id.* Based on Dr. Papilion's explanation, the Court rejects defendant's assertion that there is no medical evidence of a "crush injury."  Defendant's final argument – that there is no medical literature supporting Dr. Papilion's opinion that a person can develop meralgia paresthetica two months after an injury – is simply a misreading of Dr. Papilion's proffered testimony.  Dr. Papilion clarifies in his declaration that it is not his opinion that plaintiff "developed [the] condition two months after the incident at Home Depot." Docket No. 48-1 at 4.  Rather, the medical records indicate that plaintiff began experiencing symptoms immediately following the accident and was diagnosed with meralgia paresthetica two months later.  Docket No. 48-1 at 4; *see also* Docket No. 32-3 at 3 (stating that plaintiff had "immediate pain in his left knee as well as his left hip anteriorly and low back").  Defendant does not challenge this interpretation of the medical records.  Accordingly, the Court finds that Dr. Papilion's opinions are based on sufficient facts or data to satisfy the reliability requirements of Rule 702.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant Home Depot U.S.A., Inc.'s Motion to Exclude Plaintiff's Treating Physicians' Expert Opinion Testimony [Docket No. 26] is **DENIED**.  It is further

**ORDERED** that Defendant Home Depot U.S.A., Inc.'s Motion to Exclude the Testimony of John D. Papilion, M.D. [Docket No. 32] is **DENIED**.  It is further

**ORDERED** that, within seven days of this order, plaintiff shall provide defendant with a supplemental Rule 26(a)(2) disclosure containing more detailed information regarding the factual basis for Dr. Arthur's opinions.

DATED September 6, 2018.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge